**Timothy S. DeJong**, OSB No. 940662
tdejong@stollberne.com
**Cody Berne**, OSB No. 142797
cberne@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Brian J. Robbins**, *pro hac vice* app. forthcoming
brobbins@robbinsllp.com
**Stephen J. Oddo**, *pro hac vice* app. forthcoming
soddo@robbinsllp.com
**Eric M. Carrino**, *pro hac vice* app. forthcoming
ecarrino@robbinsllp.com
ROBBINS LLP
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| REYNOLD LAGUERRE, Derivatively on behalf of ARCIMOTO, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK D. FROHNMAYER, individually; TERRY L. BECKER, individually; DOUGLAS M. CAMPOLI, individually; JOSHUA S. SCHERER, individually; JESSE G. EISLER, individually; NANCY E. CALDERON, individually; and JEFF CURL, individually, <br><br> Defendants, <br><br> -and- <br><br> ARCIMOTO, INC. an Oregon Corporation, <br><br> Nominal Defendant. | Case No.  6:21-cv-00982 <br><br> VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT <br><br> DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant Arcimoto, Inc. ("Arcimoto" or the "Company") against certain of its officers and directors for breach of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of law. These wrongs resulted in tens of millions of dollars in damages to Arcimoto's reputation, goodwill, and standing in the business community. Moreover, these actions have exposed Arcimoto to tens of millions of dollars in potential liability for violations of state and federal law.

2.      Arcimoto designs, develops, manufactures, sells, and rents three-wheeled electric vehicles in the United States. Its flagship product is the Fun Utility Vehicle® ("FUV"), an electric utility vehicle with three wheels that purports to deliver a thrilling ride experience for two passengers. Arcimoto also produces four other vehicles: the Deliverator®, the Rapid Responder™, the Cameo™, and the Arcimoto Roadster.

3.      Between 2018 and 2020, Arcimoto regularly issued press releases propping up the Company's preorders for FUVs and announcing lucrative relationships and pilot programs with various entities.

Page 1 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

4.      This is a stockholder derivative action brought by plaintiff.  On March 23, 2021, before markets opened, Bonitas Research LLC published a report (the "Bonitas Report") revealing that Arcimoto had misled the investing public with regard to its preorders and number of vehicles actually delivered.  Although Arcimoto had announced that it had received 422 preorders for FUVs in various press releases, it had actually only delivered nineteen vehicles. The Bonitas Report also disclosed that several of the preorders had come from undisclosed related parties and that Arcimoto had "concealed safety concerns from customers and investors."

5.      In the wake of the March 23, 2021 disclosure, Arcimoto's stock plunged more than 16% over two days, or $2.72 per share, to close at $14.05 per share on March 24, 2021, erasing over $97 million in market capitalization.

6.      Further, as a direct result of this unlawful course of conduct, Arcimoto is now the subject of a federal securities class action lawsuit filed in the U.S. District Court for the Eastern District of New York on behalf of investors who purchased Arcimoto's shares.

## JURISDICTION AND VENUE

7.      Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Arcimoto maintains its principal place of business in this District; (ii) one or more of the

Page 2 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Arcimoto, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

10.     Plaintiff Reynold Laguerre was a stockholder of Arcimoto at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Arcimoto stockholder.  Plaintiff is a citizen of Pennsylvania.

**Nominal Defendant**

11.     Nominal defendant Arcimoto is an Oregon corporation with principal executive offices located at 2034 West 2nd Avenue, Eugene, Oregon.  Accordingly, Arcimoto is a citizen of Oregon.  Arcimoto designs, develops, manufactures, and sells fully electric vehicles that are lightweight, affordable, and environmentally efficient.  The Company has introduced five vehicle products: the FUV, the Deliverator, the Rapid Responder, the Cameo, and the Arcimoto Roadster.  As of December 31, 2020, the Company had approximately 132 full-time employees.

**Defendants**

12.     Defendant Mark D. Frohnmayer ("Frohnmayer") is Arcimoto's Chief Executive Officer, President, Chairman of the Board of Directors (the "Board") and a director and has been since November 2007.  Defendant Frohnmayer founded Arcimoto in November 2007. Defendant Frohnmayer is named as a defendant in a related securities action that alleges he

Page 3 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Defendant

Frohnmayer knowingly, recklessly, or with gross negligence made improper statements in the

Company's press releases and public filings concerning the Company's: (i) preorders and

delivery of vehicles; (ii) relationships between Arcimoto and related-party entities; and (iii)

safety concerns related to the FUV.  Arcimoto paid defendant Frohnmayer the following

compensation as an executive:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2020 | $97,708 | $355,946 | - | $453,654 |
| 2019 | $36,468 | - | $19,376 | $55,844 |
| 2018 | $59,584 | - | - | $59,584 |

Defendant Frohnmayer is a citizen of Oregon.

13.    Defendant Terry L. Becker ("Becker") is Arcimoto's Chief Operating Officer and

has been since September 2017, and a director and has been since May 2015.  Defendant Becker

was a member of Arcimoto's Audit Committee in at least April 2018.  Defendant Becker

knowingly, recklessly, or with gross negligence made improper statements in the Company's

press releases and public filings concerning the Company's: (i) preorders and delivery of

vehicles; (ii) relationships between Arcimoto and related-party entities; and (iii) safety concerns

related to the FUV.  Arcimoto paid defendant Becker the following compensation as an

executive:

| Year | Salary | Option Awards | Total |
|------|--------|---------------|-------|
| 2020 | $152,149 | - | $152,149 |
| 2019 | $135,000 | $37,308 | $172,308 |
| 2018 | $135,000 | $34,453 | $169,453 |

Defendant Beck is a citizen of Oregon.

Page 4 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

14.     Defendant Douglas M. Campoli ("Campoli") is Arcimoto's Chief Financial Officer and Treasurer and has been since June 2015.  Defendant Campoli also served as Arcimoto's Secretary from June 2015 to October 2020.  Defendant Campoli is named as a defendant in a related securities action that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Defendant Campoli knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's: (i) preorders and delivery of vehicles; (ii) relationships between Arcimoto and related-party entities; and (iii) safety concerns related to the FUV.  Arcimoto paid defendant Campoli the following compensation as an executive:

| Year | Salary | Option Awards | Total |
|------|--------|---------------|-------|
| 2020 | $115,001 | $77,755 | $192,756 |
| 2019 | $100,000 | $39,628 | $139,628 |
| 2018 | $100,000 | $34,453 | $134,453 |

Defendant Campoli is a citizen of Oregon.

15.     Defendant Joshua S. Scherer ("Scherer") is Arcimoto's Lead Independent Director and has been since September 2018.  Defendant Scherer is a member of Arcimoto's Audit Committee and has been since at least April 2019.  Defendant Scherer knowingly, in bad faith, or in conscious disregard for his duties caused or allowed Arcimoto to: (i) mislead the investing public about the number of preordered vehicles actually delivered to its customers; (ii) conceal the relationships between Arcimoto and related-party entities that preordered vehicles; and (iii) conceal safety concerns related to the FUV from customers and investors.  Arcimoto paid defendant Scherer the following compensation as a director:

| Fiscal Year | Fees Paid in Stock | Total |
|-------------|--------------------|-------|
| 2020 | $112,997 | $112,997 |

Page 5 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Defendant Scherer is a citizen of New York.

16.     Defendant Jesse G. Eisler ("Eisler") is an Arcimoto director and has been since September 2018.  Defendant Eisler is a member of Arcimoto's Audit Committee and has been since at least April 2019.  Defendant Eisler knowingly, in bad faith, or in conscious disregard for his duties caused or allowed Arcimoto to: (i) mislead the investing public about the number of preordered vehicles actually delivered to its customers; (ii) conceal the relationships between Arcimoto and related-party entities that preordered vehicles; and (iii) conceal safety concerns related to the FUV from customers and investors.  Arcimoto paid defendant Eisler the following compensation as a director:

| Fiscal Year | Fees Paid in Stock | Total |
|---|---|---|
| 2020 | $112,997 | $112,997 |

Defendant Eisler is a citizen of Connecticut.

17.     Defendant Nancy E. Calderon ("Calderon") is an Arcimoto director and has been since April 2020.  Defendant Calderon is Chair and a member of Arcimoto's Audit Committee and has been since at least April 2020.  Defendant Calderon knowingly, in bad faith, or in conscious disregard for her duties caused or allowed Arcimoto to: (i) mislead the investing public about the number of preordered vehicles actually delivered to its customers; (ii) conceal the relationships between Arcimoto and related-party entities that preordered vehicles; and (iii) conceal safety concerns related to the FUV from customers and investors.  Arcimoto paid defendant Calderon the following compensation as a director:

| Fiscal Year | Fees Paid in Stock | Total |
|---|---|---|
| 2020 | $104,068 | $104,068 |

Defendant Calderon is a citizen of Nevada.

Page 6 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

18.     Defendant Jeff Curl ("Curl") was an Arcimoto director from May 2015 to January 2020.  Defendant Curl was also Chair of Arcimoto's Audit Committee from at least April 2018 to at least April 2019, and a member of that committee from at least April 2018 to at least January 2020.  Defendant Curl knowingly, in bad faith, or in conscious disregard for his duties caused or allowed Arcimoto to: (i) mislead the investing public about the number of preordered vehicles actually delivered to its customers; (ii) conceal the relationships between Arcimoto and related-party entities that preordered vehicles; and (iii) conceal safety concerns related to the FUV from customers and investors.  Defendant Curl is a citizen of Oregon.

19.     The defendants identified in ¶¶12-14 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶12-13, 15-18 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶13, 15-18 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶12-18 are referred to herein as the "Individual Defendants."

## <u>DUTIES OF THE INDIVIDUAL DEFENDANTS</u>

**Fiduciary Duties**

20.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Arcimoto and its stockholders fiduciary obligations of care and loyalty, and were and are required to use their utmost ability to control and manage Arcimoto in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Arcimoto and not in furtherance of their personal interest or benefit.

21.     To discharge their duties, the officers and directors of Arcimoto were required to exercise reasonable and prudent supervision over the management, policies, practices, and

Page 7 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Arcimoto were required to, among other things:

(a)    conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(b)    remain informed as to how Arcimoto conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(c)    exercise good faith to ensure that the Company's communications with the public and with stockholders were made with due candor in a timely and complete fashion.

22.    In addition to the duties outlined above, the Individual Defendants are also required to adhere to the Company's Code of Ethics and Business Conduct (the "Code"), which the Board adopted in order to:

(a)    promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest;

(b)    promote full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with, or submits to, the Securities and Exchange Commission (the "**SEC**") and in other public communications made by the Company;

(c)    promote compliance with applicable governmental laws, rules and regulations;

(d)    promote the protection of Company assets, including corporate opportunities and confidential information;

(e)    promote fair dealing practices;

(f)    deter wrongdoing; and

Page 8 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

(g)     ensure accountability for adherence to the Code.

23.     With regard to disclosures, paragraph 5.3 of the Code states:

Each director, officer and employee who is involved in the Company's disclosure process must:

(a)     be familiar with and comply with the Company's disclosure controls and procedures and its internal control over financial reporting; and

(b)     take all necessary steps to ensure that all filings with the SEC and all other public communications about the financial and business condition of the Company provide full, fair, accurate, timely and understandable disclosure.

24.     Concerning fair dealing, paragraph 9 of the Code states:

<u>Fair Dealing</u>.  Each director, officer and employee must deal fairly with the Company's customers, suppliers, partners, service providers, competitors, employees and anyone else with whom he or she has contact in the course of performing his or her job.  No director, officer or employee may take unfair advantage of anyone through manipulation, concealment, abuse or privileged information, misrepresentations of facts or any other unfair dealing practice.

**Breaches of Duties**

25.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Arcimoto, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware of or reckless in not being aware of a risk of serious injury to the Company these breaches of duty posed.

26.     The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to (i) mislead the investing public about the number of preordered vehicles actually delivered to its customers; (ii) conceal the relationships between Arcimoto and related-party entities that preordered vehicles; and (iii) conceal safety

Page 9 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

concerns related to the FUV from customers and investors, improper practices that wasted the Company's assets, and caused Arcimoto to incur substantial damage.

27.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of Arcimoto, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Arcimoto has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

28.    In addition to these duties, under its Charter in effect since March 31, 2016, the Audit Committee Defendants, defendants Becker, Scherer, Eisler, Calderon, and Curl, owed specific duties to Arcimoto to assist the Board in overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company. Moreover the Audit Committee's Charter provides that its members shall be responsible to "administer the policies and procedures for the review, approval and/or ratification of related-party transactions involving the Company or any of its subsidiaries."

29.    Further, pursuant to the Audit Committee Charter, defendants Becker, Scherer, Eisler, Calderon, and Curl were required to review:

> (A) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies; (B) analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative generally accepted accounting principle ("GAAP") methods on the financial statements; (C) the effect of

Page 10 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and (D) the type and presentation of information to be included in earnings press releases (paying particular attention to any use of "pro forma," or "adjusted" nonGAAP, information), as well as review any financial information and earnings guidance provided to analysts and rating agencies.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

30.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

31.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of Arcimoto, regarding the Individual Defendants' management of Arcimoto's operation, including the number of preordered vehicles actually delivered to its customers, and concealment of the relationships between Arcimoto and related-party entities and safety concerns related to the FUV; and (ii) enhance the Individual Defendants' executive and directorial positions at Arcimoto and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

32.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust

Page 11 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

enrichment; and to conceal adverse information concerning the number of preordered vehicles actually delivered to Arcimoto's customers, the relationships between Arcimoto and related-party entities, and safety concerns related to the FUV.

33.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly allow Arcimoto to issue press releases that misrepresented true facts relating to the Company's business prospects.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

34.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## **DEFENDANTS MAKE A SERIES OF IMPROPER STATEMENTS**

35.    Incorporated in November 2007 and publicly listed in September 2017, Arcimoto designs, develops, manufactures, sells, and rents three-wheeled electric vehicles in the United States.  Its flagship product is the FUV, a two-person electric utility vehicle with three wheels.

36.    Between 2018 and 2020, Arcimoto issued numerous press releases informing the investing public of its lucrative preorders and business relationships.  In all, Arcimoto stated that the Company had received over 422 preorders for the FUV.  However, these announcements failed to disclose that many of the entities ordering from Arcimoto were related parties that

Page 12 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

would not follow through with their orders and that design flaws would result in recalls of the

few vehicles the Company actually produced.

37.    Arcimoto began touting its business relationships and preorders on February 14,

2018, when it issued a press release announcing its partnership with HULA Holdings ("HULA").

In particular, the press release stated:

> Arcimoto, Inc.® (NASDAQ: FUV) – makers of the world's first FUN Utility
> Vehicle® (FUV®) – an affordable, practical, and thrilling pure electric vehicle for
> everyday commuters and fleets, today announced a partnership with HULA
> Holdings to launch EV Oasis, a one-of-a-kind electric vehicle charging,
> education, and rental center in Southern California.
>
> Expected to open in San Diego, California in the summer of 2018, EV Oasis aims
> to be the quintessential west coast sustainable transportation hub.  Planned
> amenities include 10 DC fast changers and 24 Level 2 AC connections,
> educational kiosks, a local organic coffee shop, and an electric vehicle rental
> center featuring the Arcimoto FUV.  HULA Holdings has placed a deposit for 100
> all-electric Arcimoto FUVs as part of their rental operation.

38.    On June 3, 2019, Arcimoto issued a press release announcing the Company's

agreement with GoCar Tours.  In particular, the press release stated:

> Arcimoto, Inc.®, (NASDAQ: FUV) makers of the Fun Utility Vehicle® (FUV®),
> Rapid Responder™, and Deliverator™ – affordable, practical, and joyful pure
> electric vehicles for everyday commuters and fleets – announced today that it will
> develop a next-gen fleet of FUV's with GoCar Tours for GPS-guided tours of San
> Francisco.
>
> An initial order of 40 FUVs will be outfitted with GoCar's patented CoCar
> Network technology, which allows users to explore the city on their own schedule
> at their own pace.  The GoCar's mobile tour guide, the world's first GPS-guided
> tour, will give directions, crack jokes, recommend restaurants, and tell the
> legendary stories that bring San Francisco to life.

39.    On June 19, 2019, Arcimoto announced it would be collaborating with Sol Mar

Vida "to deploy the first international fleet of pure electric FUVs to Costa Rica starting this

year."  In particular, the press release stated:

Page 13 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Over the span of three years, Arcimoto and Sol Mar Vida plan to deploy 100 FUVs to be used as tourist rentals in Guanacaste province. Users will be able to rent the FUV directly at beachside hotels from Tamarindo to Playa Hermosa, a stunning stretch of white-sand beaches and world-class surf breaks known as the Gold Coast of Costa Rica."

40.     On October 2, 2019, Arcimoto issued a press release announcing that its first

rental franchisee will open in the Florida Keys and be operated by Key West-based franchisee R-

KEY-MOTO, LLC ("R-KEY-MOTO"). In particular, the press release stated:

"We think Key West will be an amazing home for our first rental franchise and pilot of our rental franchise model," said Arcimoto founder and president Mark Frohmayer. "We are very excited to partner with the R-KEY-MOTO team, combining their local market expertise and resources with Arcimoto's ultra-efficient and very fun vehicles."

Located at the Stock Island Marina Village, the new FUV Hub location will house 21 FUVs to be used as rental vehicles for tourists and cruise ship passengers to explore Key West, one of the most popular tourist destinations in the world. In addition, the FUV Hub will share vehicles with the A&B Marina Complex and the Perry Hotel Key West. Guests will be able to rent FUVs directly from the concierge and explore Stock Island and Key West.

\*       \*       \*

The Florida Keys will be the first Arcimoto rental franchise, and the fourth FUV rental location, with partnerships previously announced with Hula Multimodal in San Diego and Encinitas, Calif., as well as with GoCar Tours in San Francisco. In the Arcimoto franchise model, rental franchises will utilize Arcimoto's one-of-a-kind tourism experience and unforgettable joyride.

41.     On October 30, 2019, Arcimoto issued a press release announcing its distribution

agreement with New Zealand-based EV Distributors "to deliver a minimum of 160 Arcimoto

vehicles over the next four years." Arcimoto noted that it had "made its first international

vehicle shipment, and three FUVs are now bound for Auckland, scheduled to arrive in

November."

42.     On March 10, 2020, Arcimoto issued a joint press release with the Eugene

Springfield Fire Department announcing that it had "begun the first pilot program for testing the

Page 14 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Rapid Responder™, a pure electric three-wheeled vehicle designed for first responders to more quickly and efficiently reach emergencies at a fraction of the economic and environmental costs of traditional diesel-powered vehicles."

43.    On July 22, 2020, Arcimoto announced a pilot program with Wahlburgers, a casual dining burger restaurant, to test "the Deliverator, Arcimoto's ultra-efficient three-wheeled electric vehicle designed for local and last-mile delivery."  The press release continued: "The pilot program is anticipated to begin this August at the newest Wahlburgers location coming to the boardwalk of the world-renowned Historic Key West Seaport from the restaurant brand founded by Chef Paul Wahlberg along with brothers Donnie and Mark."

44.    On November 19, 2020, Arcimoto issued a press release announcing its first municipal pilot program with the City of Orlando.  The press release stated that "over the course of the 90-day pilot program" Orlando "will test Arcimoto vehicles across six city department continuing Mayor Buddy Dyer's efforts to transform Orlando into one of the most environmentally-friendly, economically and socially vibrant communities in the nation."

## THE TRUTH EMERGES

45.    The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge on March 23, 2021, when Bonitas Research LLC published the Bonitas Report revealing that Arcimoto had misled the investing public with regard to its preorders and number of vehicles actually delivered.  Although Arcimoto had claimed 422 preorders for the FUV, it had actually only delivered nineteen vehicles.

46.    The Bonitas Report also disclosed that that Arcimoto had "concealed safety concerns from customers and investors."  Specifically, the Bonitas Report stated:

Page 15 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

On November 18, 2020, Arcimoto filed a total production recall notice with the United States Government's federal agency, the National Highway Traffic Safety Administration [("NHTSA")] (https://www.nhtsa.gov/), due to safety issues with the electronic drivers in the vehicles which can "*lead to unexpected battery shutdown and immediate loss of traction power.*"

\*        \*        \*

Instead of notifying customers and investors of the bad news, the next day on November 19, 2020 Arcimoto management promoted a 90-day trial with the City of Orlando's first responder units.

In March 2021 we spoke with sales representatives at both Arcimoto KeyWest and GoCar Tours and confirmed that neither customer had been notified of Arcimoto's November 2020 product safety recall.

Arcimoto's November 2020 recall was preceded by two other recalls in March & May 2020 due to non-compliant brake hoses and improper traction-power harness that can lead to, among other things, "*risk of fire, and loss of traction-power.*"

47.      In fact, according to the NHTSA website, between 2017 and 2021, Arcimoto has issued forty-four recall notices for the FUV. Notwithstanding, Arcimoto's most recent Annual Report on Form 10-K (the "2020 Form 10-K"), filed with the SEC on March 31, 2021, simply states: "The Company has had various recalls for issues that have been discovered, which have been partially completed. All proper protocols have been followed for reporting these recalls to NHTSA and to our customers in a timely manner." Considering the number of recalls and the number of vehicles those recalls have affected, this is a vague statement that fails to inform stockholders of the truth regarding safety concerns of Arcimoto's vehicles.

48.      Most recently, in April 2021, Arcimoto issued a recall notice for *all* 2019 through 2021 FUV, Deliverator, Rapid Responder, and Roadster models due to a firmware problem that could lead to an unexpected battery shutdown. The recall effects 252 vehicles—100% of all vehicles released by Arcimoto.

Page 16 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

49.     The Bonitas Report also revealed that R-KEY-MOTO—Arcimoto's largest customer—is an undisclosed related party owned by insider FOD Capital, LLC ("FOD Capital"). As of July 2020, FOD Capital was Arcimoto's third largest stockholder.  The Bonitas Report went on to state:

> While Founder Mark Frohnmayer boasted in the 1Q'20 Earnings Call that R-Key-Moto was "*almost up to their full plan of 20 vehicles*", Arcimoto never disclosed any related party revenues from FOD Capital, which at US$ 20,000 per vehicle would amount up to US$ 420,000, or 29% of Arcimoto's total product revenue in 4Q'19 and 1Q'20.
>
> R-Key-Moto's 2020 Annual Report lists Michael Raymond and Matthew Strunk as Managers, who are respectively the Managing Director and Director of Accounting and Finance of FOD Capital.
>
> In addition, R-Key-Moto shares the same registered address as FOD Capital.
>
> *        *        *
>
> In 3Q'20, Arcimoto promoted a pilot program for its Deliverator vehicle with Wahlburgers Key West, whipping up investors' hope for a nation-wide deal with the Mark Wahlberg restaurant chain.
>
> Arcimoto once again failed to disclose that Wahlburgers Key West is actually operated as a franchise location by Wahlkey, LLC ("Wahlkey"), which is owned by undisclosed related party shareholder FOD Capital.

50.     Arcimoto's 2020 Form 10-K, establishes that FOD Capital is heavily invested in Arcimoto.  On December 27, 2018, Arcimoto issued to FOD Capital 500,000 shares of common stock at $3 per share, a warrant to purchase up to 942,857 shares of common stock at $3.50 per share, and a senior secured note in the principal amount of $3 million due on December 27, 2019.  In addition to this subscription agreement, there exists an Intellectual Property Security Agreement dated December 27, 2018, a Collateral Assignment of Lease dated December 27, 2018, and a Convertible Promissory Note dated September 12, 2019, in favor of FOD Capital.

Page 17 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

51.     The Bonitas Report also revealed issues related to Arcimoto's alleged partnership with HULA.  Specifically, at the time of Arcimoto's announcement of HULA's 100-unit preorder, HULA's owner was an FUV stockholder, making it another transaction with an undisclosed stockholder.  In particular, the Bonitas Report continued:

> FUV updated investors on October 30, 2018 that it planned to open and operate the Hula Facility with Hula at a 4,491 square-foot facility at 630 Tenth Avenue, San Diego.
>
> Hula's official Youtube channel contained two videos published in 1Q'19 that showcased Arcimoto's FUV vehicles in a retail rental location in East Village, downtown San Diego, CA.
>
> Arcimoto Founder Mark Frohmayer claimed on Arcimoto's 3Q'19 earnings call that the Hula Facility would open in 1Q'20.  Arcimoto's SEC filings Arcimoto reported that it had co-leased the Hula Facility whereby Hula would pay 65% of the rent for the Hula Facility.
>
> Arcimoto's 2019 10-K filed on April 14, 2020 disclosed that Hula had yet to make the promised rental payments.
>
> On November 10, 2020, Hula uploaded a new video from a different warehouse in National City that was full of Ayro 311 vehicles from Arcimoto's direct competitor.

52.     As a result of these disclosures, Arcimoto's stock plunged more than 16% over two days, or $2.72 per share, on March 24, 2021, to close at $14.05 per share compared to its closing on March 22, 2021 of $16.77 per share, erasing over $97 million in market capitalization in two days.

## <u>REASONS THE STATEMENTS WERE IMPROPER</u>

53.     The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)     that the Company's preorders of FUVs were fabricated or never

Page 18 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

completed, with only nineteen units delivered;

        (b)     that the Company failed to disclose to customers that nearly 100% of the vehicles delivered were under safety recall;

        (c)     that the Company's largest customer, R-KEY-MOTO, was an undisclosed related party owned by insider FOD Capital;

        (d)     that the Company's partnership with HULA was an undisclosed related-party transaction; and

        (e)     as a result of the foregoing, the representations concerning Arcimoto's preorders and partnerships were improper.

## DAMAGES TO ARCIMOTO

54.     As a result of the Individual Defendants' improprieties, Arcimoto disseminated improper, public statements concerning preorders for its vehicles and failed to disclose material information about the vehicles' safety issues and related-party business relationships. These improper statements have devastated Arcimoto's credibility as reflected by the Company's almost $97 million, or over 16%, market capitalization loss.

55.     Arcimoto's performance issues also damaged its reputation within the business community and in the capital markets. In addition to price, Arcimoto's current and potential customers consider a company's ability to deliver on the terms of its contracts and provide a safe product for use. Businesses are less likely to award contracts to companies that are unable to deliver safe products for which it contracted. Arcimoto's ability to raise equity capital or debt on favorable terms in the future is now impaired. In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections

Page 19 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

56.     Further, as a direct and proximate result of the Individual Defendants' actions, Arcimoto has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement in the class actions for violations of federal securities laws;

(b)     costs incurred from addressing the safety issues in the FUV and other vehicles, including the recall; and

(c)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to Arcimoto.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.     Plaintiff brings this action derivatively in the right and for the benefit of Arcimoto to redress injuries suffered, and to be suffered, by Arcimoto as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Arcimoto is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

58.     Plaintiff will adequately and fairly represent the interests of Arcimoto in enforcing and prosecuting its rights.

59.     Plaintiff was a stockholder of Arcimoto at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Arcimoto stockholder.

Page 20 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

60.     The current Board of Arcimoto consists of the following six individuals: defendants Frohnmayer, Becker, Scherer, Eisler, and Calderon and nondefendant Galileo A. Russell.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Frohnmayer, Becker, Scherer, Eisler, and Calderon Face a Substantial Likelihood of Liability for Their Misconduct**

61.     As alleged above, defendants Frohnmayer, Becker, Scherer, Eisler, and Calderon breached their fiduciary duties of loyalty by making improper statements in the Company's press releases and SEC filings to conceal adverse information concerning the number of preordered vehicles actually delivered to Arcimoto's customers, the relationships between Arcimoto and related-party entities, and safety concerns related to the FUV.

62.     The Company's primary product is the FUV.  Accordingly, defendants Frohnmayer, Becker, Scherer, Eisler, and Calderon are presumed to know about the Company's primary customers, large sales orders, as well as Arcimoto's large stockholders.  Thus, they knew the nature of the related-party deals that the Company failed to disclose to the investing market. Further, as the Company's primary product, defendants Frohnmayer, Becker, Scherer, Eisler, and Calderon necessarily knew about the safety of the FUV.  Further, they would know about the safety recalls of the FUV.  Yet, they let the Company continue to sell its unsafe product and failed to tell the market about the massive recall.

63.     Defendants Becker, Scherer, Eisler, and Calderon, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that it is responsible for compliance with accounting, legal, and regulatory requirements.  Thus, the Audit Committee Defendants were responsible for

Page 21 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls.  Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public.  Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements.  Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty because they participated in the wrongdoing described herein.  Thus, defendants Becker, Scherer, Eisler, and Calderon face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

64.     The principal professional occupation of defendant Frohnmayer is his employment with Arcimoto, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above.  Accordingly, defendant Frohnmayer lacks independence from defendants Becker, Scherer, Eisler, and Calderon due to his interest in maintaining his executive positions at Arcimoto.  This lack of independence renders defendant Frohnmayer incapable of impartially considering a demand to commence and vigorously prosecute this action.  Arcimoto paid defendant Frohnmayer the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2020 | $97,708 | $355,946 | - | $453,654 |
| 2019 | $36,468 | - | $19,376 | $55,844 |
| 2018 | $59,584 | - | - | $59,584 |

Accordingly, defendant Frohnmayer is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation.  Demand is futile as to defendant Frohnmayer.

Page 22 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

65.     The principal professional occupation of defendant Becker is his employment with Arcimoto, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above.  Accordingly, defendant Becker lacks independence from defendants Frohnmayer, Scherer, Eisler, and Calderon due to his interest in maintaining his executive position at Arcimoto.  This lack of independence renders defendant Becker incapable of impartially considering a demand to commence and vigorously prosecute this action.  Arcimoto paid defendant Becker the following compensation:

| Year | Salary | Option Awards | Total |
|------|--------|---------------|-------|
| 2020 | $152,149 | - | $152,149 |
| 2019 | $135,000 | $37,308 | $172,308 |
| 2018 | $135,000 | $34,453 | $169,453 |

Accordingly, defendant Becker is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to defendant Becker.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants owed and owe Arcimoto fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Arcimoto the highest obligation of loyalty and care.

68.     The Individual Defendants and each of them, violated and breached their fiduciary duties.

Page 23 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

69.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing: (i) the Company's preorders of FUVs were fabricated or never completed, with only nineteen units delivered; (ii) the Company failed to disclose to customers that nearly 100% of the vehicles delivered were under safety recall; (iii) the Company's largest customer, R-KEY-MOTO, was an undisclosed related party owned by insider FOD Capital; and (iv) the Company's partnership with HULA was an undisclosed related-party transaction.  Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

70.     The Director Defendants, as directors of the Company, owed Arcimoto the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper misstatements concerning Arcimoto's business prospects.  The Director Defendants knew or were reckless in not knowing that: (i) the Company's preorders of FUVs were fabricated or never completed, with only nineteen units delivered; (ii) the Company failed to disclose to customers that nearly 100% of the vehicles delivered were under safety recall; (iii) the Company's largest customer, R-KEY-MOTO, was an undisclosed related party owned by insider FOD Capital; and (iv) the Company's partnership with HULA was an undisclosed related-party transaction.  Accordingly, these defendants breached their duty of loyalty to the Company.

71.     The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of

Page 24 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

oversight, and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

72.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Arcimoto has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

73.     Plaintiff, on behalf of Arcimoto, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

74.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

75.     As a result of the breaching their fiduciary duties and causing Arcimoto to make improper statements regarding its business prospects, the Individual Defendants have caused Arcimoto to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

76.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

77.     Plaintiff, on behalf of Arcimoto, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Arcimoto.  The Individual Defendants were

Page 25 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Arcimoto.

80.    Plaintiff, as a stockholder and representative of Arcimoto, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

81.    Plaintiff, on behalf of Arcimoto, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Arcimoto, demands judgment as follows:

A.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.    Directing Arcimoto to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Arcimoto and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.    a proposal to strengthen the Company's controls over financial reporting;

2.    a proposal to strengthen Arcimoto's oversight of its disclosure procedures;

Page 26 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

4.      a provision to permit the stockholders of Arcimoto to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Arcimoto has an effective remedy;

D.      Awarding to Arcimoto restitution from defendants, and each of them, and ordering disgorgement of all benefits and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.

Dated: June 30, 2021

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

By: *s/Cody Berne*
      **Timothy S. DeJong**, OSB No. 940662
      **Cody Berne**, OSB No. 142797

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:        tdejong@stollberne.com
           cberne@stollberne.com

Page 27 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

-And-

**Brian J. Robbins**, *pro hac vice* app. forthcoming
**Stephen J. Oddo**, *pro hac vice* app. forthcoming
**Eric M. Carrino**, *pro hac vice* app. forthcoming
ROBBINS LLP
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
Email: brobbins@robbinsllp.com
       soddo@robbinsllp.com
       ecarrino@robbinsllp.com

**Attorneys for Plaintiff**

Page 28 – VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT